OPINION OF THE COURT
M. Dolores Denman, J.
Plaintiff, Town of Evans, has moved for summary judgment against defendant Catalino and his surety, Aetna Insurance Company, seeking an accounting, surcharge of Catalino in order to restore funds in the amount of $167,000 plus interest which plaintiff alleges were illegally transferred, and the imposition of a civil penalty against Catalino. By cross motion defendant Catalino seeks summary judgment dismissing the complaint for failure to state a cause of action. Aetna also cross-moves for summary judgment dismissing the action against it or in the alternative seeks summary judgment ordering indemnification by Catalino. The cause of action against defendant Ianni was dismissed at the time of oral argument by stipulation of all the parties.
The essential facts are not in dispute. The Town of Evans *263 had two funds entitled "Capital Reserve Fund for Recreation Commission: Recreation Site Acquisition Fund” and "General Capital Reserve Fund,” which funds had been duly established by resolution of the Evans Town Board pursuant to section 6-c of the General Municipal Law and section 55 of the Town Law. Two additional accounts had also been created without resolution by the town board and these were denoted "Capital Reserve Fund: Recreation” and "Capital Reserve Fund: Highway and Water Building.”
Defendant Catalino served as Supervisor of the Town of Evans from January 1, 1970 to December 31, 1977. On April 20, 1976 he transferred $2,000 from the "Recreation Site Acquisition Fund” to the "General Fund (Recreation).” On December 2, 1976 he made two transfers out of the "Capital Reserve Fund: Recreation.” One diverted $5,000 to the "General Fund,” and the second diverted $15,000 to the "General Part Town Fund.” On December 16, 1976 defendant transferred $50,000 from the "Capital Reserve: Highway and Water Building” to the "General Fund.” On the same date he transferred $95,000 from the "General Capital Reserve Fund” to the "General Part Town Fund.” Neither defendant nor the successor administration ever replenished those funds.
Plaintiff maintains that these five transfers were illegal and that an accounting should be ordered. However, no accounting is necessary. The books and ledgers setting forth the transactions at issue are in plaintiff’s custody and control, and the town has sufficiently detailed in its pleadings the transfers for which it seeks an accounting. Additionally, defendant Catalino has been named only in his individual capacity and as such cannot be ordered to make an accounting in his fiduciary capacity. (Leonard v Pierce, 182 NY 431; Pardee v Mutual Benefit Life Ins. Co., 238 App Div 294; Genesee Val. Trust Co. v Newborn, 167 Misc 220, mot to dismiss amd complaint den 168 Misc 703.)
Plaintiff also seeks to surcharge defendant and his surety for the money transferred from the capital reserve accounts. The first issue to be resolved is whether all four accounts were in fact capital reserve accounts. There is no dispute that the "Recreation Site Acquisition Fund” and the "General Capital Reserve Fund” were capital reserve funds properly established by resolution of the town board. Defendant contends, however, that the status of the latter fund subsequently was changed. When that fund was established, *264 $22,487.79 was deposited in it. By resolution of October 16, 1968 the board provided for an expenditure of $15,400 from this fund for the purchase of a parcel of land. The annual audit reports for the years 1971-1977 and the supervisor’s monthly reports for 1976 and 1977 which were admitted into evidence show that the fund was continually maintained under the title of "General Capital Reserve Fund” and kept separately in the town’s records. Over the course of the years transfers from the "General Fund” and Federal revenue sharing funds are noted and investment of moneys of the fund in certificates of deposit are recorded. In his affidavit defendant merely asserts that at some point the original moneys deposited in the fund were expended, that the subsequent transfers from the "General Fund” to the "General Capital Reserve Fund” were made without board resolutions and therefore there was no intent to confer the status of capital reserve funds on these moneys. This assertion, based only upon information and belief, is insufficient to support a finding that a triable issue of fact exists regarding the status of the "General Capital Reserve Fund.” The language of the resolution establishing this fund closely follows that of section 55 of the Town Law. It was not created to fund one specific capital project but could be applied to any object or purpose having a period of probable usefulness of at least five years. Further, the resolution does not limit the fund to any particular deposit but permits funding from time to time and from a variety of sources. It is incumbent upon the defendant to come forward with some evidence that the subsequent deposits were not made by proper board resolution or budgetary appropriation and that some action was taken to make this account part of the general fund despite its continued treatment and characterization as a capital reserve fund. Accordingly, the money in the "General Capital Reserve Fund” at the time of the diversion was an unexpended balance in a capital reserve fund.
The status of two other funds is questioned by defendant. A bank account for the "Capital Reserve Fund: Recreation” was opened on January 19, 1968 and one for "Capital Reserve: Highway and Water Building” on May 24, 1973. The documents show that both of these accounts were maintained separately in the town records through December 31, 1977. Over the years various sums were transferred into these accounts from the "General Fund” and from Federal revenue sharing funds. Further, the moneys in these funds were from *265 time to time invested in certificates of deposit with the interest being retained in the fund. In other words, these two funds were handled as capital reserve funds; however, they were not established by board resolution. Because they were not so established, defendant claims that they were not capital reserve funds. Plaintiff contends that they were de facto capital reserve funds.
Plaintiff relies on two opinions of the State Comptroller for support. (24 Opns St Comp, 1968, p 976; 1968 Opns St Comp No. 68-862 [unreported].) Those two opinions concerned a situation in which a town board passed a resolution to establish a capital reserve fund without making it subject to a permissive referendum as required by law. The Comptroller concluded that although no legal fund was created in that situation, a de facto fund had been established.
In the instant case, the absence of resolutions by the board is a greater departure from the statutory requirements for creating capital reserve funds. However, the persistent course of conduct by the supervisor and the board in treating and characterizing these funds as capital reserve funds is sufficient to estop the town or the defendant from now claiming a different status for them. The public policy behind section 6-c of the General Municipal Law and sections 55 and 55-c of the Town Law is to protect taxpayers of a town from public officials who would shift funds away from an approved purpose and misuse them as an unlawful accumulated surplus to hide deficit spending or to reap political profit. To allow officials to circumvent this policy by maintaining a fund not legally established but purporting to be a capital reserve fund and held out to the public as such would be improper. Accordingly, the "Capital Reserve Fund: Recreation” and the "Capital Reserve: Highway and Water Building” were de facto capital reserve funds.
Having determined that these four funds were capital reserve funds, I find that the transfers made from them to the town’s general funds were illegal. A town is a creature of statutory law and as such can act only within the perimeters of the applicable legislation. The only expenditures or transfers involving these funds which could be made by the town through its agents are delineated in section 6-c of the General Municipal Law and section 55 and subdivision 6 of section 55-c of the Town Law. Further, it has been concluded consistently by the State Comptroller that transfers from capital reserve *266 funds to general funds cannot be made. (21 Opns St Comp, 1965, p 71; 9 Opns St Comp, 1953, p 241.) These interpretations, while not controlling, are to be given great weight and not contravened unless such construction is irrational and unreasonable. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 129.) The fact that defendant may have considered the transfers an "inter-fund loan” does not alter the impropriety of his acts. (32 Opns St Comp, 1977, p 169.) Nor do his contentions that he acted in good faith, in ignorance of the statute, upon the advice of the Town Attorney, and to save the town the interest expense of having to borrow money affect the illegality of the transfers. The fact that the town board subsequently became aware of the transfers and nevertheless approved all payments out of the general funds is of no significance. Inasmuch as the board could not have made the transfers in the first instance, ratification of defendant’s transfers would not render them legal.
Defendant, as an official entrusted with public funds, must be held strictly accountable for any mishandling of such funds where some waste or injury to the public interest is shown. Defendant contends that plaintiff has failed to state a cause of action because it has not shown any damages. That position is without merit. Were it not for the illegal transfer, the fund would have accumulated substantial interest. (General Municipal Law, § 6-c, subd 7; Town Law, § 55-c, subd 3.) Consequently, plaintiff has stated a cause of action for a breach of defendant’s fiduciary duties as supervisor. (General Municipal Law, § 6-c, subd 11; Town Law, §§ 55-c, 125, subd 1; cf. Village of Little Valley v Ayres, 2 NYS 691, under similar facts, the court found no cause of action where the village suffered no damages from the diversion.)
Having reached a determination that the Town of Evans was damaged, the court must further determine the extent of defendant’s liability. Plaintiff contends that defendant must restore the full amount diverted. The amount of the surcharge to be imposed must be determined in light of all the circumstances. It is conceded by plaintiff that all of the funds diverted out of the capital reserve accounts went into the general fund and were used to pay legitimate and authorized debts of the Town of Evans. There are no allegations that defendant used the money for any personal or political gain or for any wrongful purpose.
There does not appear to be any case in New York directly *267 in point. The Court of Appeals of Kentucky has addressed this question a number of times. (See, e.g., Daily v Smith's Administratrix, 297 Ky 689; City of Newport v Rawlings, 289 Ky 203; Wheeler v City of Hopkinsville, 269 Ky 289; City of Newport v McLane, 256 Ky 803.) The principle which emerges from those cases is consistent with general principles of law and equitable doctrine: i.e., while a fiduciary must be held strictly accountable for a diversion of funds in violation of statutory constraints and public trust, he should be permitted to set off any amounts used to pay valid obligations of the public entity. He then should remain liable for any amounts not so expended and for interest that would have accrued on all of the funds. Applying that principle to defendant Catalino seems appropriate in these circumstances. To hold him liable for any greater amount would compensate the town in excess of the injuries suffered and would amount to a windfall. To permit any lesser recovery would be tantamount to a tacit approval of defendant’s breach of duty and would make the statute regarding capital reserve funds ineffectual. The undisputed facts support a determination that defendant Catalino illegally transferred capital reserve funds and must restore to those funds the interest lost between the dates of the various transfers and December 31, 1977, which was the termination of his official capacity, and hence his control over the finances of the Town of Evans. In this case, liability for the lost interest adequately protects the public policy underlying section 6-c of the General Municipal Law and sections 55 and 55-c of the Town Law.
By commencing an action of this nature, the Town of Evans has submitted itself to the equitable jurisdiction of this court. In the exercise of such jurisdiction the court may effect whatever remedy necessary to do justice to the parties and the subject matter. (Ferguson v Village of Hamburg, 272 NY 234; Horton v Niagara, Lockport & Ontario Power Co., 231 App Div 386.) Further, one who seeks equity must be prepared to do equity. (Duggan v Platz, 263 NY 505; Grosch v Kessler, 256 NY 477.) A search of the record reveals that as of the date of argument on the motions, the reserve funds remained in existence but had not been replenished. The Town of Evans is a continuing entity and holds all public moneys, including the four capital reserve funds, in trust through its elected officials and agents. Accordingly, it quite properly has sought restoration of any loss caused by defendant. But it is also incumbent upon the town to restore to the four reserve accounts the *268 funds expended for legitimate obligations of the town. Plaintiff cannot be granted relief for defendant’s breach of his public trust while at the same time continuing to maintain the funds in a depleted state after having had the benefit of the diversions.
Therefore plaintiff will be granted judgment surcharging defendant for interest lost through December 31, 1977 upon the condition that it restore to the capital reserve funds the amounts diverted to the general funds by defendant. The court will retain jurisdiction for one year to allow plaintiff to effect this result. If after one year plaintiff has not replenished the funds, defendants may move for an order dismissing plaintiff’s cause of action.
Defendant Aetna Insurance is liable as surety on both bonds for the interest lost to these funds during the years 1976 and 1977 and plaintiff may take judgment against Aetna under the same conditions as against defendant Catalino. If the surety pays on its bonds, judgment shall be entered on its cross claim against defendant Catalino for indemnification. (Blanchard v Blanchard, 201 NY 134; Fidelity & Cas. Co. of N. Y. v Finch, 3 AD2d 141.)
In view of the disposition reached, the civil penalty provided under subdivisoin 6 of section 55-c of the Town Law will not be imposed.
Accordingly, it is ordered that (1) the cause of action against defendant Ianni is dismissed; (2) jurisdiction over this action is retained by the court; (3) summary judgment will be granted against both Catalino and Aetna for interest lost from the time of the diversion through December 31, 1977 upon the condition that plaintiff restores to these funds the amounts diverted within one year from the entry of this order; (4) defendants Catalino and Aetna will be granted summary judgment dismissing the complaint if plaintiff does not meet the foregoing conditions within one year from entry of this order; and (5) summary judgment will be granted to defendant Aetna on its cross claim against defendant Catalino for indemnification if it pays on the surety bonds.