OPINION OF THE COURT
Joan B. Lefkowitz, J.
The above-captioned cases represent two separate challenges to the procedures by which the Nassau County budget was adopted for the year ending December 31, 1992. By order of the Deputy Chief Administrative Judge, Hon. Joseph J. Traficanti, Jr., dated January 8, 1992, the undersigned was designated to preside over these two proceedings. On January 29, 1992 oral argument was held and all the matters were deemed fully submitted.
For purposes of this opinion the court has treated the two proceedings together and arbitrarily designated the Cioci matter as action No. 1 by virtue of priority in the index number and oral argument in Cioci preceded that in Korn.
1. Cioci
Within the context of a CPLR article 78 proceeding, petitioners seek a declaratory judgment that the Nassau County budget for fiscal 1992 is invalid due to amendments made by the Board of Supervisors on December 16, 1991, which it is claimed improperly converted a line-by-line proposed budget into a lump-sum budget. Petitioner also seeks an order in the nature of mandamus to compel respondents to adopt a proper budget and, further, a preliminary injunction to restrain the issuance of checks to "exempt” county employees except emergency service personnel.
The respondents have filed an answer with objections in point of law, affidavits and exhibits. Respondents contend that the changes made in the budget were reductions in various departments and are properly reflected in the budget as a line item.
The issue before the court is whether a gross line item labeled "salary reduction” or the like sufficiently comports with the requirements of the Nassau County Charter (L 1936, ch 879, as amended).
*314 2. Korn
The petition in Korn seeks essentially similar relief as in Cioci, but with a different focus. Korn is an article 78 proceeding wherein the petitioner seeks an order in the nature of mandamus directing the County Executive to resubmit a proper proposed budget for fiscal year 1992 and declaratory relief invalidating the proposed budget and vote thereon.
Respondents have filed their verified answer with objections in point of law, affidavits and exhibits. Petitioner has served a reply affidavit.
The narrow issue presented in Korn is the propriety of leaving blank spaces in the proposed budget, which the petitioner claims violated the Charter. Respondents argue that blank spaces mean zero (-0-) and is a proper entry (or nonentry) to use in the proposed budget.
3. Discussion
Budgets represent a detailed estimate of the amount of expenditures of each department so as "to ascertain the amount of money which must be raised to conduct the affairs of the municipality for the ensuing fiscal year”. (15 McQuillin, Municipal Corporations § 39.39, at 147 [3d rev ed].) "The budget must be prepared in the manner, and contain those items provided for and required by statute”. (15 McQuillin, op. cit., § 39.40, at 153.)
In Matter of Korn v Gulotta (72 NY2d 363 [1988]) the Court of Appeals on complaint of the same petitioner herein, invalidated the 1988 Nassau County budget for failure of the proposed budget to include all surplus funds as estimated end of year cash balance. There, as a general statement and later with reference to the Nassau County Charter the majority opinion stated (72 NY2d, at 372-373):
"A budget is a statement of the financial position of the government, for a definite period of time, based upon an estimate of proposed expenditures and anticipated revenues (see, Matter of Collins v City of Schenectady, 256 App Div 389, 391). The method by which public budgets are prepared is governed by the State Constitution and the applicable State statutes. The requirements contained in those documents are not particularly burdensome and permit the executive and legislative officials considerable freedom of action in implementing governmental operations and programs and providing *315 for the revenues to fund them. The legal requirements they contain, however, are grounded in the general principles of fiscal responsibility and the accountability that underpins the regulation of all public conduct and they must be followed.
"The governing statute in this case is the Nassau County Charter enacted by the State Legislature in 1936 and which contains provisions essentially the same as those found in the laws governing other municipalities (see, County Law § 355 [1] [g]; Town Law §107 [1] [b]; Village Law § 5-506 [1] [c]). It provides that no later than the 15th day of September each year Nassau County department heads shall furnish to the County Executive estimates of revenue and expenditures for their department for the next fiscal year (§ 301). From this data the County Executive must prepare his proposed budget for the ensuing fiscal year and submit it to the legislature no later than the second Monday in November (§ 302). The proposal must contain a statement of all estimated revenues exclusive of revenues derived from the tax levy (§ 302 [1]), a statement of estimated revenues from the tax levy (subd [2]), a statement of estimated receipts from the sale of bonds and other borrowing (subd [3]), a statement of the amount of the sinking fund available to pay bonded indebtedness (subd [4]), and 'a statement of the estimated cash balance, after deducting commitments estimated to be outstanding at the close of the current fiscal year, in each fund, applicable to expenditures of the ensuing fiscal year’ (subd [5]).
"[1] The provisions of section 302 are mandatory.”

(a) Korn

In resolving the instant controversies the court will discuss the present Korn proceeding first as an invalidation of the proposed budget would necessarily render academic the Cioci proceeding.
The applicable provision of section 302 of the Charter provides:
"§ 302. Scope of county budget. Not later than the second Monday in November in each year the county executive shall submit to the board of supervisors a proposed budget of revenue and expenditure for the ensuing fiscal year for the county. The proposed county budget shall contain * * *
"5. a statement of the estimated cash balance, after deducting commitments estimated to be outstanding at the close of the current fiscal year, in each fund, applicable to expendí *316 turcs of the ensuing fiscal year; and any estimated deficit in any fund required to be made up in the ensuing fiscal year”.
The halcyon days of a surplus are gone at present. Petitioner Korn alleges that the proposed budget does not contain the estimated deficit as required under section 302 (5) of the Charter. Petitioner focuses on four funds, the General Fund, Police Headquarters Fund, Police District Fund and County Road Fund as having blank spaces in the proposed budget of 927 pages at the four places where any deficit would otherwise be stated.[1]
Respondents, by affidavit of Palmina Grella, an employee of the Nassau County Office of Management and Budgets, have established that the blank spaces mean zero (-0-) and this is an acceptable format for proposed budgets and has been used in Nassau County since 1943. The potential deficit claimed by petitioner was financed in 1991 by budget notes and revenue anticipation notes so that it is estimated that the fund balances would break even; that is, no surplus or deficit would exist in the 1992 budget. Pursuant to subdivision (7) of section 302 of the Charter the indebtedness and borrowing for 1991 is clearly set forth in the proposed budget.
Additional affidavits of the deputy budget directors of Rock-land and Westchester Counties have been filed to make known that it is their practice and the common practice to use blank spaces instead of zeros (-0-) in the budget documents.
While the court agrees with the petitioner that the use of "-0-” in lieu of a blank is preferable, the budget document custom and practice spanning nearly 50 years may not be lightly disregarded. Consequently, the court finds that petitioner has not borne his burden of proof on any of the claims asserted. The newspaper articles. lack probative value. Petitioner has failed to overcome the presumption that the elected public official charged with the duty to perform has performed that duty properly. (1 Jones, Evidence § 3:31 [6th ed].) Accord *317 ingly, the petition is dismissed and the rights of the parties declared as follows: the proposed budget is valid.

(b) Cioci

Each Charter is construed according to the language contained therein. (Matter of Batemann v Mayor of City of Mount Vernon, 247 NY 250 [1928].) The budgetary process is designed to provide estimates and a public airing of the figures but it is not necessary for all items to be broken down in meticulous detail, which would defeat the flexibility that must exist in the county departments. (Coggeshasll v Hennessey, 279 NY 438 [1939] [lump-sum appropriation under Town Law valid].)
Itemization of the various elements of the departmental budgets is required where feasible. (People v Tremaine, 281 NY 1, 7 [1939].) Lump-sum appropriation and detailed itemization represent the two extremes of budgetary methodology. "In between the two extremes we must rely upon the Executive and Legislative branch of the government to provide a budget sufficiently itemized to comply with the spirit and words of the Constitution, and yet containing lump sum appropriations when experience in the line of work or in the department shows that details and items in a budget would be impracticable or almost impossible — unworkable.” (People v Tremaine, supra, 281 NY, at 12.)
At bar, the proposed budget is itemized. On December 16, 1991 by Ordinance No. 519A-1991 the proposed budget was adopted by a vote of the Board of Supervisors 86 to 0 with 22 legislators not voting. The fourth "Whereas” clause in the ordinance states that "this Board of Supervisors has given due consideration and deliberation to each and all of the items” set forth in the proposed budget. As the proposed budget, the adopted budget consists of 927 pages. As to various departments the adopted budget column approves line by line the items set forth in the proposed budget (which column is called "Recomm By County Exec.”) and then, where appropriate, as a last line to the column contains a figure called "salary reduction” or the like. The difference in the figures proposed and adopted are significant in many cases. To illustrate, for the District Attorney’s Department the County Executive’s proposal was $8,553,026 in salaries (against a request of $9,541,420 for 159 employees), reflecting a salary reduction of $388,000. The adopted budget column shows a reduction of $3,493,960 at the salary reduction line but it is impossible to ascertain the amount of reduction line by line as the adopted *318 budget uses the exact same figures for salaries as the proposed budget with no explanation for the reduction.[2]
Section 305 of the Charter provides: "§ 305. Changes in budget. After the conclusion of such hearing the board of supervisors may strike out or reduce any item of appropriation in the county budget. Before, however, inserting any additional item or increasing any item of appropriation, the board of supervisors must publish, at least twice in the official newspapers, a notice setting forth the nature of the proposed changes in the budget and fixing the time, not less than five days after the second publication, at which they will hold a public hearing thereon. After such hearing, which may be adjourned from day to day, the board of supervisors may insert the additional item or items and make the increase or increases to the amount in each case indicated by the published notice or to a lesser amount; provided that the county executive may veto any such addition or increase and that no such addition or increase shall be passed over his veto by less than a two thirds vote of the voting strength of the board of supervisors.”
While an argument could be advanced that the word "item”, as used in section 305, ought to be accorded its usual dictionary definition (i.e., to give particulars)[3] the court does not find any violation of section 305. The Board of Supervisors reviewed a line-by-line budget, adopted a line-by-line budget as reduced and was authorized to reduce any item of appropriation. This it did at the salary reduction line and at other budget reduction lines. There is no further requirement that it invade the prerogatives of the department heads and actually select the employee whose salary is to be reduced or is to be laid off or determine what equipment, materials or supplies are not to be provided.
*319 Matter of Block v Sprague (285 NY 69 [1941]) is not to the contrary. There the question was whether Nassau County could approve a lump-sum budget that was not itemized. The Court of Appeals answered in the negative. That, however, is not this case as itemization is provided with discretion left to the appropriate department heads on how best to implement the reduction in salary and the reduction in other areas.
In Saxton v Carey (44 NY2d 545 [1978]) the Court of Appeals held, on review of the State budget, that it was not the proper function of the court to police the degree of itemization in the budget. The court stated (at 549-550): "No one disputes the need for itemization, and indeed, the present budget is certainly itemized to a considerable extent. Appellants urge us to review the extent of that itemization, and to determine whether it accords with the intent of the Constitution. The Constitution, however, does not prescribe any particular degree of itemization. As then Judge Breitel correctly stated in his dissent in the Hidley case, '[t]here is a constitutional mandate to itemize. There is no constitutional definition of itemization. There is no judicial definition of itemization and no inflexible definition is possible. Itemization is an accordion word. An item is little more than a "thing” in a list of things. A house is an item, and so is a chair in the house, or the nail in the chair, depending on the depth and purpose of the classification. The specificness or generality of itemization depends upon its function and the context in which it is used. In one context of a budget or appropriation bill the description of 1,000 police officers within a flexible salary range would be specific and particular; in another it would leave the appointing power with almost unlimited control. In one context an "item” of $5,000,000 for construction of a particular expressway might seem specific; in another, void of indication when, how, or where the expressway or segments of it would be constructed. This suggests that there is something of a battle over words in debating the need for items, rather than a grappling with a functional concept’ (28 NY2d, p 444, supra). ”
At bar, of course, it is the legislative body that is saying its budget is itemized sufficiently within the elastic definition of itemization. It would seem preferable to make the reduction directly opposite the very line being reduced, however, that is impractical and almost impossible, until department heads are consulted and given an opportunity to effect the reductions. This is the very area in which the courts are loath to be involved. "Today, we simply refuse to extend the power of the robe into *320 an arena in which it was never intended to play a role. We hold only that the degree of itemization and the extent óf transfer allowable are matters which are to be determined by the Governor and the Legislature, not by judicial fiat.” (Saxton v Carey, supra, 44 NY2d, at 551.) Should the Board of Supervisors fail in its responsibility to provide "a sufficiently itemized budget, the remedy lies not in the courtroom, but in the voting booth”. (Supra, at 551.) Consequently, the petition is dismissed and the rights of the parties declared as follows: the 1992 Nassau County budget is adjudged valid.

. The court has reviewed the 927-page document. Blanks are interspersed throughout parts of the budget. For example, blanks are found in the proposed budget and adopted budget columns for Criminal Justice CRD Council and CE-OFC of Employee Relations Departments. Blanks are found in those two columns and the Department Request Column in the General Services and Labor Departments. Blanks are found throughout various portions of the different departments such as CE-Office of Mgt. & Budgets, Recreation & Parks and Social Service Departments. These are illustrative only and not all inclusive examples.

. There are at least six different reduction lines that appear throughout the budgetary documents, with apparent computer coding designations representing budget reduction for: (1) 199 equipment, (2) 299 material and supplies, (3) 499 general expenses, (4) 549 contract services, (5) 599 utility costs and (6) 957 salary. In at least one instance, for the Commissioner of Accounts, the proposed budget for salaries exceeded the request, which was reduced by the adopted budget and is reflected on the salary reduction line but is more than the department request. Additionally, in certain instances (e.g., Criminal Justice CRD Council, CE-OFC of Employee Relations, Labor Departments) there are blanks in the proposed and adopted budgets at specific reduction lines (e.g., Nos. 199 and 499). Perhaps this is explained by reference to deficits in the prior fiscal year.

. Webster’s Third New International Dictionary 1203; 1 Funk & Wagnalls, New Practical Dictionary 712 (1956); 48A CJS, at 247-248.