### PEOPLE ex rel. GRIFFING v. LISTER et al.

(Supreme Court, Appellate Division, Second Department. June 16, 1905.)

DE FACTO OFFICERS—POSSESSION OF CORPORATE SEAL.

> Under the patent granted to the town of Southampton in 1686, creating a board of trustees with authority to sue and be sued, and to have and use a seal, members of a board of trustees regularly elected and having possession of the corporate seal are, while so in possession, officers de facto, whose acts as to third persons are binding on the town.

Certiorari by the people, on the relation of Timothy M. Griffing, against Thomas W. Lister and others, as the town board of the town of Southampton, to review a determination of said board. Determination reversed.

Argued before BARTLETT, WOODWARD, JENKS, RICH, and MILLER, JJ.

Thomas Young, for relator.

Walter H. Jaycox, for defendants.

RICH, J. The town of Southampton, Suffolk county, N. Y., was created by royal charter, the first patent of the town being granted by Gov. Andros in 1676, the second by Gov. Dongan 10 years later. The Dongan patent, after vesting all the undivided land within the town limits in 12 trustees, provides as follows:

> "And that they and their Successors by the name of Trustees of the freeholders and commonalty of the town of Southampton be and shall be forever in future times, persons able and Capable in law to have perceive receive and possess not only all and singular the premises but other messuages lands Tenements Privileges Jurisdictions franchises and hereditaments of whatsoever kind or species they shall be to them and their Successors in fee forever or for the term of a years or yeares or otherwise whatsoever manner it be and also goods chattels and all other things of whatsoever name nature or quality or species they shall be and also to give grant release aliene assigne and dispose of lands Tenements hereditaments and all and every other act and acts thing and things to do and Execute by the name aforesaid and that by the name of the Trustees of the freeholders and commonalty of the towne of Southampton to plead and be impleaded answer and to be answered unto de-

fend and be defended they are and may be Capable in whatsoever place and places and before whatsoever Judges and Justices or other persons or officials of his said Majesty his heirs and Successors in all & all manner of accons Plaints suits Complaints causes matters and demands whatsoever of what kind quality and species the same be and shall be in manner and forme as any other of his majestyes Liedge people within this Province can or are able to have require receive possesse Enjoy retaine give grant release aliene assigne and dispose plead and be impleaded answer and be answered unto defend and be defended do permitt or execute.   And for the better enabling the Trustees of the freeholders and commonalty of the towne of Southampton aforesaid in doing and Executing all and singular the premises I have willed granted and determined and by these presents do will grant and determine that from henceforward and forever hereafter the said Trustees of the Free-holders of the Commonalty of the towne of Southampton doe and may have and use a Common seale which shall serve to Execute the causes and affairs whatsoever of them and their Successors."

The trustees named in the patent, and their successors in office, became, were, and now are trustees of the town in the execution of the trust thus created, being vested by the patent with all the powers necessary for the proper discharge of their duties.   On the first Tuesday in April, 1901, Elios P. Tuttle, Charles A. Payne, John M. Hildrith, Henry Ludlow, Charles A. Ludlow, Albert J. Post, Henry H. Post, Harvey P. Fanning, Horace M. Wells, Benjamin F. Rogers, Ascher B. Hallock, and Frank C. Rogers were elected trustees of the freeholders and commonalty of the town of Southampton.   From that time until April 1, 1903, said trustees retained the seal of the town, its books and records, and transacted all business relating to the trust.   It appears, however, that on April 1, 1902, 12 other persons were elected trustees of the town of Southampton, viz., Orlando Hand, Louis Hertz, Edward B. Hill, J. Allen Burnett, Samuel Berry, Gilbert H. White, Theodore H. Carter, Adelbert D. Carter, Henry D. Burton, J. Mitchel Stevens, H. Brewster Tuthill, and Samuel F. Griffin.   The relator, an attorney and counselor at law, in the year 1902, and after the election of April 1st of that year, was employed by the trustees of the town elected in 1901, and rendered legal services in behalf of the town, the reasonable and undisputed value of which was $169.50.   The town board of the town of Southampton have refused to pay this bill, on the ground that it is for services rendered to 12 men who, at the time the services were rendered, were not officers of the town, and had no authority as trustees to employ relator, and that the town board is not authorized by law to pay said bill.   It is the contention of the relator that Elios P. Tuttle and the 11 persons associated with him were elected at the town meeting of 1901 for two years under the provision of chapter 481, p. 610, of the Laws of 1897, while the defendants insist that Orlando Hand and his associates, who were elected April 1, 1902, were the trustees de jure at the time when relator claims to have been employed by the Tuttle board.

The trustees have power under the charters to employ counsel when, in the proper discharge of their duties, the aid of counsel may be deemed to be necessary.   It is conceded that the services performed by relator were necessary; but even so, the town board is

justified in its refusal to allow his claim, unless it is made to appear that he was employed by a board having power to enter into a valid agreement which would bind the town. Did the Tuttle board at the time the contract of employment was made constitute the de facto board of trustees of the freeholders and commonalty of the town of Southampton? We think so. At the time of relator's employment they were using the corporate seal and transacting the business of the town under the trust, whether or not they had title to the office whose functions they discharged. "In Wilcox v. Smith, 5 Wend. 234, 21 Am. Dec. 213, the general proposition is asserted that an individual coming into office by color of an. election or appointment is an officer de facto, although his election or appointment was illegal." Dolan v. Mayor, 68 N. Y. 274, 278, 23 Am. Rep. 168. Here the Tuttle board were in office under color of title; it was a serious question whether they were not trustees de jure of said town; it depended upon the construction that might be placed upon the biannual town meeting law (Laws 1897), and it must be held that they constituted the de facto board of trustees. The relator was no party to the usurpation of the board; he occupied the relation of a third party, and performed useful and valuable services in behalf of the town under the employment of these trustees, and ought to be paid. It was held in Wilcox v. Smith, supra, that:

"The principle is well settled that the acts of officers de facto are as valid and effectual when they concern the public or the rights of third persons as though they were officers de jure. The affairs of society could not be carried on upon any other principle."

The doctrine of Adee v. Arnow, 91 Hun, 329, 36 N. Y. Supp. 1020, to the effect that the town board alone can employ an attorney, has no application to this case, where, as has been pointed out, the patent expressly empowers the trustees "to plead and be impleaded," etc. The determination brought up for review by the writ of certiorari must be annulled, and the town board be directed to audit the claim of the relator.

Determination annulled, with $50 costs and disbursements, and proceedings remitted to the town board of Southampton for audit of the relator's claim. All concur.