■ MICHAEL J. DUFFY et al., Respondents-Appellants, v NICHOLAS V. LONGO et al., Defendants, and HENRY SPALLONE, Appellant-Respondent. [616 NYS2d 760] —In a taxpayer class action, inter alia, to recover damages for waste pursuant to General Municipal Law § 51 and to enjoin the City of Yonkers from authorizing the payment of any legal fees and costs incurred by the defendant council members in defending the action, (1) the defendant Henry Spallone appeals, as limited by his notice of appeal and brief, from so much of an order of the Supreme Court, Westchester County (Gurahian, J.), entered December 12, 1990, as denied the branch of the defendant council members' motion which was for summary judgment dismissing the first cause of action insofar as it is asserted against him and granted the branch of the plaintiffs' cross motion which was for partial summary judgment on the first cause of action pursuant to General Municipal Law § 51; (2) the plaintiffs cross-appeal, as limited by their notice of appeal and brief, from so much of the same order as found

that the defendant Henry Spallone is entitled to be reimbursed by the City of Yonkers, pursuant to Public Officers Law § 18, for his legal fees and expenses; and (3) the defendant Henry Spallone appeals, as limited by his notice of appeal and brief, from so much of an order of the same court, entered April 26, 1991, as, upon reargument, adhered to the prior determination.

Ordered that the appeal from the order entered December 12, 1990, is dismissed since that order was superseded by the order entered April 26, 1991, made upon reargument; and it is further,

Ordered that the order entered December 12, 1990, is affirmed insofar as cross-appealed from; and it is further,

Ordered that the order entered April 26, 1991, is modified, on the law, by deleting the provision thereof which adhered to the prior determination contained in the order entered December 12, 1990, denying the branch of the defendant council members' motion which was for summary judgment dismissing the first cause of action insofar as it is asserted against the defendant Henry Spallone and substituting therefor a provision granting that branch of the motion and dismissing the first cause of action insofar as it is asserted against the defendant Henry Spallone; as so modified, the order is affirmed insofar as appealed from; and it is further,

Ordered that the order entered December 12, 1990, is modified accordingly; and it is further,

Ordered that the defendant Henry Spallone is awarded one bill of costs.

We conclude that the plaintiffs' complaint fails to allege facts sufficient to state a cause of action for restitution pursuant to General Municipal Law § 51, and, accordingly, we dismiss the first cause of action insofar as it is asserted against the defendant Henry Spallone.

In their first cause of action pursuant to General Municipal Law § 51, the plaintiffs allege that the acts of the defendant Yonkers City Council members in defying an order of the United States District Court for the Southern District of New York amounted to gross negligence, dereliction of duty, and illegal conduct, all of which caused waste of municipal funds. The Supreme Court granted the plaintiffs partial summary judgment on the issue of liability finding that the defendant council members' violation of the District Court's order was an illegal act injurious to the City of Yonkers. The Supreme

Court held that, in order to compel restitution pursuant to General Municipal Law § 51, "[a]ll that is required is that the act complained of be illegal, and that such illegal action be injurious to the municipality." We disagree. Case law has firmly established that, in order to impose personal liability upon a public official pursuant to General Municipal Law § 51, a taxpayer must establish that the official's actions were both illegal *and fraudulent, collusive, or motivated by personal gain.* Because not one of the latter three elements is established, or even alleged, the first cause of action must fail.

· A taxpayer's action is purely a creature of statute *(see, Gaynor v Rockefeller,* 21 AD2d 92, 95, *affd* 15 NY2d 120). At common law a taxpayer had no right of action against a public officer to restrain or prevent the waste of public funds, to restrain or prevent injury to public property, or to restrain a threatened illegal official act. As noted by the Court of Appeals in 1874:

"Municipal corporations had become to an alarming extent the prey of the spoiler, and the tax-payer, upon whom the loss fell and the burden of the wrong-doing ultimately rested, was remediless. The wrong was ordinarily accomplished not by a waste or destruction of the property or funds of the corporation in actual possession, but by the issue and sale of the bonds or other obligations of the municipality, and a conversion or misappropriation of the proceeds * * *

"By the rules of law, as established by the courts, the taxpayers were entirely without remedy, no matter how gross the fraud or wanton the robbery, and notwithstanding the officers of the corporation, those whom the law had put in authority to watch over and protect their constituents and guard their interests, were faithless to their duty or confederate with the wrong-doers" *(Ayers v Lawrence,* 59 NY 192, 195).

The Legislature recognized that the law was inadequate to protect the rights of the public and enacted legislation to remedy the condition. The first statute adopted on this subject was chapter 161 of the Laws of 1872 entitled "An act for the protection of tax-payers against the frauds, embezzlements and wrongful acts of public officers and agents." It authorized a taxpayer to maintain an action "to prevent waste or injury to any property, funds or estate" (L 1872, ch 161, § 1) of public corporations *(see generally, Ayers v Lawrence,* 59 NY 192, *supra; Altschul v Ludwig,* 216 NY 459). In subsequent years the taxpayer's cause of action appeared in the Laws of 1881 (ch 531), which was amended by chapter 673 of the Laws of

1887 and by chapter 301 of the Laws of 1892. It is now expressed in section 51 of the General Municipal Law and has remained in that form since shortly after the turn of the century.

General Municipal Law § 51 is entitled "Prosecution of officers for illegal acts". Because it is in derogation of the common law, it is subject to the general rule that it is circumscribed and not amenable to judicial extension *(see, Matter of Ryan,* 291 NY 376, 400). It allows a taxpayer to maintain an action against "[a]ll officers, agents, commissioners and other persons acting, or who have acted, for or on behalf of" any public corporation (General Municipal Law § 51). Such an action may be maintained for any of the following purposes:

1. To prevent any illegal official act;

2. To prevent waste or injury to any property, funds, or estate of a public corporation; and

3. To compel restitution of such property, funds, or estate *(Altschul v Ludwig,* 216 NY 459, 463, *supra;* General Municipal Law § 51).

The plaintiffs have not maintained this action to prevent waste, but to compel the restitution of money the City of Yonkers had to pay in contempt fines. While General Municipal Law § 51 enables a taxpayer to compel an official to personally restore wasted municipal property, such restitution may only be compelled under certain strictly limited circumstances. In this regard, the statute provides as follows: "In case the waste or injury complained of consists in any * * * officer, * * * *by collusion or otherwise,* contracting, auditing, allowing or paying * * * any fraudulent, illegal, unjust or inequitable claims, demands or expenses * * * against or by such * * * municipal corporation, or by permitting a judgment to be recovered against such * * * municipal corporation, or against himself in his official capacity, either by default or without the interposition and proper presentation of any existing legal or equitable defenses, or by any such officer * * * retaining or failing to pay over to the proper authorities any funds or property of any * * * municipal corporation, after he shall have ceased to be such officer * * * *the court may,* in its discretion, prohibit the payment or collection of any such claims, demands, expenses or judgments, in whole or in part, and shall enforce the restitution and recovery thereof * * * and also may, in its discretion, *adjudge and declare the colluding or defaulting official person-*

*ally responsible therefor,* and * * * provide for the collection or repayment thereof, so as to indemnify and save harmless the said * * * municipal corporation from a part or the whole thereof" (General Municipal Law § 51 [emphasis added]).

In interpreting this language, this Court has previously held that restitution may be compelled only if the waste or injury is effected by "collusion or otherwise" *(see, Daly v Haight,* 170 App Div 469, *affd* 224 NY 726). This Court concluded that: "This statute and those like unto it do not afford the sole remedy for official wrongdoing. They provide the remedies available by a *taxpayer.* He may prevent any illegal official act or prevent waste or injury. Or he may have restored or made good the property funds or estate. But it is only when the waste or injury is by collusion or otherwise, or by the default in permitting a wrongful judgment or by retention of or failing to pay over any public funds or property, that the court shall enforce the restitution and recovery, and also, in its discretion, declare the official responsible financially therefor" *(Daly v Haight, supra,* at 474-475; *see also, Wallace v Jones,* 195 NY 511).

In a more recent case, the Court of Appeals, citing *Daly v Haight (supra),* held that under General Municipal Law § 51, "personal liability arises only if the illegal acts were collusive, fraudulent, or motivated by personal gain" *(Stewart v Scheinert,* 47 NY2d 826, 827-828).

The defendant council members' defiance of the District Court's order cost the City of Yonkers a huge sum of money in fines. Nevertheless, because their acts lack the necessary element of collusion, fraud, or personal gain, a prima facie case of personal liability pursuant to General Municipal Law § 51 does not lie against them. Although their defiance of a lawful order of the District Court was a violation of law, the defendant council members performed their acts of defiance openly with the apparent support of and in response to pressure from the majority of their constituents. This is clearly not a case in which the officials committed a theft or fraud upon the taxpayers of Yonkers *(cf., Ayers v Lawrence,* 59 NY 192, 195, *supra).* Indeed, in its original liability ruling, the District Court determined that segregated housing in the City of Yonkers was "the result of a pattern and practice of racial discrimination by City officials, pursued in response to constituent pressures" *(United States v Ycnkers Bd. of Educ.,* 624 F Supp 1276, 1373, *affd* 837 F2d 1181, *cert denied* 486 US 1055). Even after bankrupting contempt fines had been imposed, the defendant council members' constituents continued to oppose

compliance with the District Court's housing remedy order. As noted by dissenting Justice Brennan in *Spallone v United States* (493 US 265): "During the local city council election last November, petitioner Spallone 'campaigned [for Mayor] on a pledge to continue the city's resistance to a Federal desegregation order requiring it to build low-income housing in white neighborhoods,' N.Y. Times, Nov. 8, 1989, p. B1, col. 5, and Spallone was elected in a 'race [that] was widely seen as a referendum on the housing desegregation plan.' *Ibid.* Petitioners Chema and Fagan were reelected to the council, and the new member filling Spallone's vacated seat also opposes compliance; thus 'candidates opposed to the housing plan appea[r] to hold a majority.' *Ibid.*" *(Spallone v United States,* 493 US, *supra,* at 289, 290, n 3).

We have no difficulty in concluding that the contempt finding has stripped the defendant council members of any possible claim that their actions were legal. The test under General Muncipal Law § 51, however, is not legality alone. The statute, as written, is aimed at officials whose illegal acts entail collusion, fraud, or personal gain. For more than 120 years, throughout its entire history and incarnations, the statute has never been applied to conduct of the kind involved here, nor has it been applied in any instance in which the critical element of collusion, fraud, or personal gain was lacking. We are not free, however tempting it may be, to rewrite the statute or to extend its plainly worded legislative reach. Accordingly, we dismiss the plaintiffs' first cause of action, insofar as it is asserted against the defendant Henry Spallone, for failure to state a cause of action.

We have reviewed the parties' remaining contentions and find them to be without merit. Rosenblatt, Ritter and Copertino, JJ., concur.

Thomspon, J. P., concurs in part and dissents in part and votes to dismiss the appeal from the order dated December 12, 1990, and to affirm the order dated April 26, 1991, with the following memorandum: I disagree with the majority that General Municipal Law § 51 has no application under the circumstances of this case. In my view, the series of events which preceded the imposition of contempt sanctions against the defendant council members provides a compelling basis for the application of the statute.

In 1985, the United States District Court for the Southern District of New York held, *inter alia,* that the City of Yonkers (hereinafter the City) had deliberately concentrated most of its Federally subsidized and public housing in the southwest

portion of the City so as to maintain residential segregation in violation of Title VIII of the Civil Rights Act of 1968 and the Fourteenth Amendment of the US Constitution *(United States v Yonkers Bd. of Educ.,* 624 F Supp 1276). The District Court subsequently issued a housing remedy order in May of 1986, which, *inter alia,* directed the City to take various affirmative steps toward the construction of additional public housing units and to disperse those units throughout Yonkers *(see, United States v Yonkers Bd. of Educ.,* 635 F Supp 1577, 1580-1581). Pending appeal of the liability issue and the remedial order, and notwithstanding the absence of a stay, the City declined to take the steps required by the District Court's remedial order.

In December of 1987, the Court of Appeals for the Second Circuit affirmed the District Court's rulings on liability and remedies *(see, United States v Yonkers Bd. of Educ.,* 837 F2d 1181), and the United States Supreme Court denied the City's application for a writ of certiorari in 1988 *(see, Yonkers Bd. of Educ. v United States,* 486 US 1055). Shortly after the Second Circuit's affirmance, the City entered into a consent decree in which it agreed, *inter alia,* to take certain steps to implement the District Court's remedial order including the adoption, within 90 days, of a legislative package known as the Affordable Housing Ordinance.

Despite the facts that the City had executed the consent decree and all avenues of appellate redress concerning the District Court's finding of discrimination had been exhausted, the City informed the District Court in a memorandum that it would not voluntarily enact the legislation contemplated by the consent decree. After efforts to obtain the City's cooperation proved fruitless, the District Court entered an order in July of 1988 directing the City to adopt a resolution indicating its willingness to enact the Affordable Housing Ordinance. The order provided that the failure to vote favorably on the resolution would result in (1) contempt citations and escalating bankrupting fines against the City and (2) a fine of $500 per day for each individual council member who voted against the resolution. Notwithstanding the threat of substantial sanctions, the Yonkers City Council defeated the resolution by a 4-3 vote. After conducting a hearing, the District Court responded by holding the City and the individual council members comprising the majority in contempt and by imposing sanctions in accord with its July 26, 1988, order. On appeal, the Court of Appeals for the Second Circuit affirmed the District Court's imposition of contempt sanctions *(see, United*

*States v City of Yonkers,* 856 F2d 444). In September of 1988, after the Supreme Court had denied the City's application for a stay *(see, Spallone v United States,* 487 US 1251) and with fines reaching the sum of $1 million per day, the Yonkers City Council finally adopted a resolution declaring its intent to enact the Affordable Housing Ordinance.

In the interim, the United States Supreme Court had granted certiorari in connection with the District Court's imposition of contempt sanctions against the individual council members and vacated those sanctions *(see, Spallone v United States,* 493 US 265). The Supreme Court's ruling was narrowly premised upon "traditional equitable principles" *(Spallone v United States, supra,* at 274), which it construed as requiring that a court imposing contempt sanctions utilize " ' "[t]he least possible power adequate to the end proposed" ' " *(Spallone v United States, supra,* at 276, 280, quoting *Anderson v Dunn,* 6 Wheat [19 US] 204, 231). Since, in the Supreme Court's view, the record failed to demonstrate that imposing sanctions against the individual council members was necessary to achieve the desired end of compliance with the consent decree, the imposition of those sanctions was premature and an abuse of the District Court's discretion *(see, Spallone v United States, supra,* at 280). Notably, the Supreme Court found it unnecessary to reach any of the defendant council members' constitutional arguments—including that of legislative immunity *(see, Spallone v United States, supra,* at 274).

In November of 1988, the plaintiffs, who are Yonkers taxpayers, commenced the present taxpayers' class action pursuant to General Municipal Law § 51 to hold council members Longo, Spallone, Chema, and Fagan, defendants herein, personally liable for the contempt sanctions imposed on the City by the District Court.

Upon the parties' respective motions and cross motions for summary judgment, the Supreme Court granted summary judgment to the plaintiffs on their cause of action to impose personal liability upon the defendant council members pursuant to General Municipal Law § 51. The court concluded, *inter alia,* that the defendant council members' refusal to comply with the District Court's July 1988 order was an illegal act and that the ensuing contempt sanctions imposed upon the City constituted waste within the meaning of General Municipal Law § 51. The Supreme Court is correct.

I cannot subscribe to the majority's conclusion that General Municipal Law § 51 has no application to the defendant

council members' illegal defiance of the District Court's July 1988 order, conduct which, in my view, needlessly threatened to bankrupt the City of Yonkers and ultimately resulted in the imposition of a massive contempt sanction. Not only was the defendant council members' conduct illegal and patently wasteful of the City's resources, but the evidence is persuasive that the defendant council members' intransigence was attributable in no small degree to the perception that compliance would be politically inexpedient, a belief that gave voice to the resentments of those intent upon undermining the District Court's ability to act upon its affirmed findings of systematic discrimination in the City of Yonkers. Further, a compelling inference exists that the defendant council members—mindful of the political, and thus personal gain likely to flow·from obstruction—were intent upon pursuing a policy of noncompliance irrespective of the potentially devastating toll this course of conduct would exact upon the City they had been elected to serve. Under these circumstances, I conclude that there exists a convincing predicate for the imposition of liability pursuant to General Municipal Law § 51.

Justice Brennen persuasively assessed the realities underlying the relevant events in his dissent in *Spallone v United States* (493 US 265, 281, *supra)* when, quoting a contemporary news account, he noted that the " '[t]he defiant Councilmen are riding a wave of resentment among their white constituents that is so intense that many insist they are willing to see the city bankrupted' " *(Spallone v United States,* 493 US, at 293, *supra,* quoting New York Times, Aug. 5, 1988, at B2, col 4). Moreover, Justice Brennen observed that the political climate was such that: "[C]apitulation by any individual councilmember was widely perceived as political suicide. As a result, even assuming that each recalcitrant member sought to avoid city bankruptcy, each still had a very strong incentive to play 'chicken' with his colleagues by continuing to defy the Contempt Order while secretly hoping that at least one colleague would change his position and soften the wrath of the electorate. As Judge Sand observed, '[w]hat we have here is competition to see who can attract the greatest notoriety, who will be the political martyr * * * *without regard to what is in the best interests of the City of Yonkers'* " (*Spallone v United States, supra,* at 293-294 [emphasis in original]).

The relevant facts support this conclusion. By the time the District Court had issued its contempt order, lengthy delays attributable to the City's intransigence had already ensued. The City had repeatedly defaulted in complying with its

obligations under the District Court's original remedial order and later revealed that it would not voluntarily abide by the key provisions of the consent decree that it had entered into *(see, Spallone v United States, supra,* at 269-271). Despite the foregoing, and even though further defiance was virtually certain to result in the imposition of bankrupting contempt fines upon the City, the defendant council members nevertheless refused to comply with the District Court's order requiring that the City Council express its commitment to the core provisions of the consent decree, which the City had already officially adopted. Moreover, the defendant council members' refusal to abide by the District Court's order occurred after all avenues of appellate redress with respect to both the liability issue and the remedial order had been exhausted and, thus, at a time when noncompliance was no longer a lawful course of conduct or one which could be undertaken in good faith *(cf., Stahl Soap Corp. v City of New York,* 5 NY2d 200, 204).

An action pursuant to General Municipal Law § 51 may be maintained " 'only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes' " *(Metsivta of Forest Hills Inst. v City of New York,* 58 NY2d 1014, 1016, quoting *Kaskel v Impellitteri,* 306 NY 73, cert denied 347 US 934; *Stewart v Scheinert,* 47 NY2d 826, 827-828; *Daly v Haight,* 170 App Div 469, 473, affd 224 NY 726; *see also, Matter of Korn v Gulotta,* 72 NY2d 363). When, as here, "those whom the law [has] put in authority to watch over" the taxpayers' interests have engaged in entirely illegal conduct and "[are] faithless to their duty" *(Ayers v Lawrence,* 59 NY 192, 195), it is entirely appropriate that General Municipal Law § 51 should provide a remedy for recovery of the ensuing dissipation of the City's economic resources.

I reject the contention that the United States Supreme Court's ruling, which vacated the contempt sanctions imposed upon the individual council members, is a bar to personal liability under General Municipal Law § 51. The Supreme Court's narrowly crafted holding is based upon the traditional equitable principle that contempt sanctions must be imposed so as to achieve the desired end of compliance with the " ' "least possible power adequate to the end proposed" ' " *(Spallone v United States,* 493 US, *supra,* at 273-274, 276). The fact that certain principles applicable to contempt rulings may weigh against contempt sanctions in a given case is no bar to liability under a State statute governed by substantively distinct legal considerations and policy concerns.

Similarly, I am unpersuaded by the contention that the defendant council members' actions were protected by the doctrine of legislative immunity. Indeed, none of the several courts in which the defendant council members have presented this argument have adopted it. Although the United States Supreme Court has recognized the doctrine of legislative immunity in *Tenney v Brandhove* (341 US 367, 376), and applied it where "legitimate legislative activity" is involved, neither *Tenney* nor any of the authorities relied on by the defendant Henry Spallone hold that legislators may, with impunity, obstruct a Federal Court's attempt to remedy past acts of racial discrimination by simply refusing to comply with the Court's lawful, remedial orders. I note in this respect that Spallone's claim of immunity is further undermined by the fact that the City, through its governing council, adopted a consent decree indicating its willingness to comply with the District Court's principal findings and remedial directives *(see, United States v City of Yonkers, supra,* at 457).

Under these circumstances, the order appealed from should be affirmed.

Miller, J., concurs.