*519 OPINION OF THE COURT
Peter H. Mayer, J.
The motions are decided as follows: it is ordered that this motion (001) by plaintiffs to prohibit and compel and for other relief and the motions by defendant Trustees of the Freeholders and Commonalty of the Town of Southampton (002) and by defendant Town of Southampton (003) for dismissal are consolidated for the purposes of this determination; and it is further ordered that this motion (001) by plaintiffs for an injunction pendente lite prohibiting defendant Trustees from disbursing funds from the Trustee accounts without first obtaining defendant Town Board of the Town of Southampton’s consent and an audit and approval of defendant Comptroller of the Town of Southampton; to compel defendants to produce resolutions or other documents establishing said accounts; for the issuance of a court-ordered subpoena duces tecum to each depository institution holding accounts of public funds for the Trustees; and to direct the furnishing of a security bond as required by General Municipal Law § 51 is determined herein; and it is further ordered that this motion (002) by defendant Trustees for an order pursuant to CPLR 3211 dismissing the complaint in its entirety is denied; and it is further ordered that this motion (003) by defendant Town for an order pursuant to CPLR 3211 dismissing the complaint in its entirety is denied.
Plaintiffs, Town of Southampton taxpayers who reside in the Incorporated Village of West Hampton Dunes, commenced this taxpayers’ action on November 15, 2010 pursuant to General Municipal Law § 51 to protect the public fisc and to prevent the alleged waste and unlawful expenditure of, and to restore, the public funds of the Town of Southampton held in bank accounts and disbursed solely by the Trustees and for declaratory and injunctive relief.
By their complaint, plaintiffs allege a first cause of action pursuant to General Municipal Law § 51 that the Trustees are a public governmental agency of the Town, are “local officers” of the Town pursuant to Public Officers Law § 2, and “officers” of the Town pursuant to General Municipal Law § 51, and that during the period of January 1, 2005 through June 30, 2010 the Trustees unlawfully expended not less than $1,539,467.18 from their nine depository accounts of Town public funds received as part of their official duties, public functions or as payments for public services or fees accounted to the Federal Employer Identification Number of the Trustees rather than that of the *520 Town. They attach a list (exhibit 5) to their complaint containing said alleged illegal and/or wasteful expenditures of public funds. In addition, plaintiffs allege that each of the Trustee accounts was illegally established by the Trustees rather than by resolution of the Town Board,[1] that the funds within said accounts are not under the control and management of the Town Board as required by Town Law § 64, and that neither the Town Board nor the Town Comptroller have any authority, or signatory power, over or otherwise control or manage any of the Trustee accounts.
Plaintiffs also allege that the Trustees made unlawful expenditures from said accounts including gifts of public funds through donations to a religious institution, the purchase of funeral arrangements and donations to various not-for-profit organizations in violation of article VIII, § 1 of the State Constitution. Plaintiffs further allege that the Trustees failed to follow state municipal bidding laws when contracting with vendors for the purchase of goods and services with public funds and claim that during the period between January 1, 2005 and March 30, 2010, the Trustees made such purchases in excess of the $10,000 baseline required for municipal bidding pursuant to General Municipal Law § 103 on not less than 11 occasions in the total sum of $212,511.03.
Finally, plaintiffs allege that the Trustees commenced litigation, the Suffolk County Supreme Court action entitled Semlear v Incorporated Vil. of Quogue under index No. 30131/2010, on their own and with private counsel that they have paid with public funds, all without the knowledge or approval or lawful authority of the Town Board in contravention of an opinion numbered 74-258 and dated March 18, 1974 of the Office of the State Comptroller (formerly known as the New York State Department of Audit and Control). Plaintiffs claim that the Trustees intend to use funds received from the settlement of a lawsuit brought in the public interest to recover damages due to discharges of petroleum compounds containing methyl-tertiarybutyl-ether (MTBE) as their own legal defense fund and that payments to the Trustees’ private counsel from said fund constitute gifts of public funds in violation of article VIII, § 1 of the State Constitution as well as a waste of the Town’s public funds. They also seek an accounting; an order compelling the Trustees to turn over to the Town and its Town Board and Comptroller *521 all public funds currently held in any of the Trustee accounts, prohibiting the payment of the Trustees’ private counsel in said aforementioned action, and directing the recovery of funds already expended by the Trustees, including holding the Trustees, defendants Fred Havemeyer, William Pell, Jon Semiear, Eric Shultz and Ed Warner, Jr., individually liable to the Town for the repayment of all public funds expended from Trustee accounts during their tenures in office; and an award of attorneys’ fees to the taxpayers. Plaintiffs’ second cause of action is for a declaratory judgment declaring the legal status of the Trustee accounts, the alleged gifts of public funds, the Trustee initiated litigation and the current manner of municipal purchasing and bidding by the Trustees.
Defendant Trustees move (002), as does defendant Town (003), for an order pursuant to CPLR 3211 dismissing the complaint in its entirety. The Trustees seek dismissal of the first cause of action pursuant to General Municipal Law § 51 on the grounds that they are not a “municipal corporation” nor a “public officer” but rather a separate governing body from the Town and that the funds in question, which are not appropriated by Town tax levy but are instead collected by virtue of the Trustees’ office and activities, including permit fees and the sale of sand, are not Town, that is municipal, funds but are separate funds, which are not commingled with Town-controlled funds in Town accounts, but are instead placed in Trustee accounts and that the Trustees have the sole authority and discretion to control and expend said funds pursuant to the powers and authority granted to them under the royal patents, by state legislative enactments and by the final, so-ordered, stipulation of settlement in the Suffolk County Supreme Court action entitled Warner v Thiele under index No. 93-26288. The Town requests dismissal pursuant to CPLR 3211 (a) (1) and (7) or, in the alternative, conversion of this motion to a summary judgment motion pursuant to CPLR 3211 (c)[2] on the grounds that the Town has no involvement with the Trustees’ management, *522 control and expenditure of their own funds solely generated by Trustee activities, and that the Town is in compliance with its requirement of general management and control under Town Law § 64 (1) by managing and controlling all taxpayer funds from tax levies upon real property located within the Town’s corporate limits, including those budgeted and allocated for the lawful activities of the Trustees, and by subjecting the Trustee accounts to audit each year by auditing firms employed by the Town in accordance with the so-ordered stipulation and through the designation of bank depositories for the separate accounts of the Trustees.* *[3] Defendants emphasize that the Trustees are actively involved in the Town’s annual budgetary preparation process, pursuant to Town Law §§ 106 (2) and 109, at which time the Town Supervisor, Town Comptroller and Town Board are informed of the Trustees’ expected income and expenses for the coming year, the results of the Trustee audits by the separate Town and Trustee CPA firms as well as by the State Comptroller, and the year-end balances of all of the Trustee accounts. They also emphasize that the Town tax levy appropriations annually budgeted and allocated to the Trustees are under Town control inasmuch as said funds are placed in one or more Town accounts together with other Town revenues and that expenditures made from those accounts for Trustees’ activities require the approval of the Town Comptroller and Town Board. The Trustees argue that the instant action is part of a coordinated strategy by plaintiffs to cut off funding for the Trustees’ legal expenses in an action to quiet title instituted by them and pending in this court entitled Strough v Incorporated Vil. of W. Hampton Dunes under index No. 06-29678.
Plaintiffs assert that they have sufficiently pleaded their causes of action so as to survive the dismissal motions by alleging that public officers, the Trustees, are expending or maintaining public funds from the Trustee accounts in a manner that contravenes state law and that the public entity invested by statute, Town Law § 64 (1), with the control of said funds, the Town Board, has failed and continues to fail in performing its duty of “management and control over Town finances” in the *523 manner described in Town Law § 64 (1), article 8 of the Town Law, and General Municipal Law §§ 10 and 103. Plaintiffs maintain that the “illegality” alleged in the complaint involves unlawful expenditure of public funds in derogation of statutory requirements providing for the protection of the public fisc engaged in by the Trustees as admitted to by defendants, so as to allow the Trustees to control their accounts, and evidenced by the so-ordered stipulation in Warner v Thiele. They claim that the alleged “waste” comprises of payments made from Trustee accounts of over $30,000 that are not authorized under the New York Constitution including gifts of public funds through donations in lieu of flowers to a religious institution, the purchase of funeral arrangements, donations to various not-for-profit organizations, and payment of cell phone and gasoline stipends to the Trustees themselves. Plaintiffs argue that defendants have admitted the unlawful nature of the gifts as defendants have returned, and redeposited, the value of said gifts to the Trustee accounts. In addition, plaintiffs assert that there is alleged “waste” and “illegality” in the Trustees’ failure to follow municipal bidding procedures on projects involving highway construction and maintenance, bulkhead construction and maintenance, and dredging as well as the purchase of goods outside of required municipal purchasing procedures. They refer to and submit the minutes of a meeting of the Trustees on October 15, 2012 indicating that a $12,000 increase for a capital project had been approved without public bid pursuant to General Municipal Law § 103, without the knowledge of all of the Trustees, and without a formal resolution or even a public discussion of the project.
Plaintiffs also assert that the current system violates article 8 of the Town Law inasmuch as off-budget revenues are not properly delineated to the Town Board in the tentative budget tendered by the Trustees when the Town Board deliberates on the proposed budget (Town Law § 104 [1]); there is no preexpenditure “audit” by the Town Board or Town Comptroller for each payment made from Trustee accounts (Town Law § 104 [1]) thus permitting expenditures in derogation of the requirements of article VIII, § 1 of the Constitution and municipal bidding and purchasing requirements (General Municipal Law § 103; Town Law § 122); and the Town Board has no ability to reappropriate funds from the Trustee accounts if needed for more urgent municipal purposes (Town Law § 112) or due to a lapse in appropriations (Town Law § 111).
*524 Plaintiffs further assert that although the Trustees have traditionally had the power to hire attorneys, defendants do not deny the allegation that the legal account used to pay counsel was established and funded from off-budget and unanticipated revenues such that the Trustees are not required to initially seek funding. Plaintiffs argue that a review of the official minutes and records of the Town from 1786 to the summer of 1970, some of which are submitted herein, reveals that there has always been prior approval of the sale or lease of property or the hiring of counsel or the use of funds for any project by the voters at annual Town meetings or by the Town Board, and that said records demonstrate that the Trustees have always been a subordinate body and not a separate, autonomous government. They note that following the summer of 1970, references to the Town Board cease in the records, without any explanation, and payments are solely referenced by accounts from which they should be paid. Plaintiffs assert that the minutes are devoid of explanation as to how or why the standard method for authorizing and auditing bills to be paid for Trustee expenses was changed thus leaving it unclear whether bills continued to be sent to the Town Board for payment or whether the Trustees had obtained signatory power over said accounts. Plaintiffs emphasize that new evidence revealed at the hearing on November 14, 2012 indicates that the Town Board has been administering all budgeted and appropriated funds for the Trustees’ benefit in compliance with article 8 of the Town Law while the Trustees have retained under their control the fees and payments received in their hands. They claim that this relatively recent retention of sole control of certain funds by the Trustees is an aberration when viewed in the context of the historical evolution of the Town.
The Trustees
“are the successors to the original [Tjrustees of the [FJreeholders and [Cjommonalty of the Town of Southampton whose proprietary rights to certain lands and waters of the Town of Southampton and their right to legislate and control the same as a body politic is derived from antique, royal land grants and patents which have been repeatedly confirmed and upheld throughout the history of this State for over 300 years by both the framers of the State Constitution and the Legislature despite various specific attacks upon such authority” (State of New York v Trustees of Freeholders & Commonalty *525 of Town of Southampton, 99 AD2d 804, 805 [2d Dept 1984] [citation omitted]).
“The town of Southampton, Suffolk county, N. Y., was created by royal charter, the first patent of the town being granted by Governor Andros in 1676, the second by Governor Dongan ten years later. The Dongan patent, after vesting all the undivided land within the town limits in twelve trustees, provides as follows: ‘And that they and their Successors by the name of Trustees of the freeholders and commonalty of the town of Southampton be and shall be forever in future times, persons able and Capable in law to have perceive receive and possess not only all and singular the premises but other messuages lands Tenements Privileges Jurisdictions franchizes and hereditaments of whatsoever kind or species ... to plead and be impleaded answer and to be answered unto defend and be defended they are and may be Capable in whatsoever place and places and before whatsoever Judges and Justices’ ” (People ex rel. Griffing v Lister, 106 App Div 61, 62-65 [2d Dept 1905]).
Chapter 283 of the Laws of 1831, a state legislative act declaring the powers and duties of the Trustees of the Freeholders and Commonalty of the Town of Southampton, provided, among other things, that “the funds arising from fines, penalties and forfeitures, and the management of the property and franchises of the [T]own, shall be appropriated and applied as the [Trustees may deem most proper to promote the interest of the said [T]own” (L 1831, ch 283, § 4). Town Law § 64 (1) entitled “Control of town finances” provides that the town board of every town
“[s]hall have the general management and control of the finances of the town and shall designate in the manner provided by section ten of the general municipal law the depositaries in which the supervisor, town clerk, tax collector, tax receiver, and trustees of the freeholders and commonalty of a town shall deposit and secure all moneys coming into their hands by virtue of their offices.”
The Trustees’ unique status as an entity derived from colonial times has made them difficult to describe or place or characterize in the context of the ever-changing economic and governmental conditions of the Town of Southampton. Over the years the Trustees have been variously characterized as a trust, *526 a corporation, a governing entity, a body politic and an administrative unit. They have relied on the original royal patents, state legislative enactments, and orders of the courts over the years to defend and support their continued existence and for delineation of their powers and duties in the face of the ever-changing world around them. To a certain extent the Trustees have historically been given discretion in the proper discharge of their duties, such as the power to enter into agreements, hire counsel, hire employees or consultants, and perform minor ministerial acts without the prior authorization or approval of said acts by Town officials or Town electors (see People v Lister, 106 App Div at 63-65). However, the Trustees’ reliance on public funds, in the form of Town tax revenue appropriations and the fees and fines and monies received from sand sales coming into their hands, in order to perform their activities and duties and their proprietary, or private, rights over lands and waters in trust for and administered by them for the citizens of the Town renders the Trustees financially accountable to the citizens of the Town to prevent waste or injury to public property (see Knapp v Fasbender, 1 NY2d 212, 230 [1956]). Town and Trustee records from the 1700s until the 1970s submitted herein evince that the Trustees have never been completely financially independent and that instead, historically, they have been financially dependent on Town government officials (Town Board, Town Supervisor, and/or Town Auditors) and/or voters for the approval and/or payment of certain bills arising from the Trustees’ self-authorized transactions such as entering into contracts for goods and services and the hiring of counsel. Said records are unclear as to the actual practice and procedure of the depositing of monies coming into the Trustees’ hands into accounts and whether said accounts were under the control of the Trustees. Thus, there has been a very fine and, in some instances, indistinct line between the domain of Town government and that of the Trustees, with both entities retaining powers to make rules and regulations, to collect public monies, and to authorize their own activities within their own spheres.
Defendants maintain, through affidavits in support from Julie Kranz, Secretary to the Trustees, and Eric Shultz, current President of the Board of Trustees, that their current practices and procedures concerning the financing of Trustee activity are dictated by and are in compliance with the stipulation entered into between the defendants in the Suffolk County Supreme *527 Court action entitled Warner v Thiele under index No. 93-26288, which stipulation was so-ordered by the court on March 9, 1994. Said stipulation provided the following:
“6. For ensuing fiscal years, the Trustees shall submit an annual budget request to the Supervisor through the regular budget request process pursuant to Town Law § 106 for tax revenues to supplement the revenue collected by them by virtue of their office. Any such budget request shall be transmitted by the Supervisor to the full Town Board, and such budget request, to the extent that it provides reasonable funding for the Trustees’ proposed activities, will be adopted as a separate budget line, to be collected from the full-Town fund, on the final budget for the fiscal year in question....
“8. A separate fund in the form of a fiduciary account in a Town-designated official depository shall be created for the Trustees’ funds. The Trustees shall exercise full control over said fund and shall have the sole discretion for appropriations from said fund. The fund shall be subject to audit by the Town’s independent auditor and by [the] New York state auditor. This fund shall constitute the sole source of all Trustee operating expenses.
“9. All revenues collected by the Trustees by virtue of their office shall be deposited in said fund, as well as any and all tax revenues appropriated pursuant to a budget approved by the Town Board. . . .
“11. The Town Board and the Trustees shall each adopt a resolution authorizing the execution of this Stipulation and binding the parties to the provisions hereof.
“12. The provisions of this Stipulation are intended to bind all the public bodies and officers represented in this litigation and shall be embodied in the final judgment of this Court which shall be entered as promptly as practicable after the execution of this Stipulation, without costs to either party.”
“A taxpayer suit under General Municipal Law § 51 ‘lies only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes’ ” (Godfrey v Spano, 13 NY3d 358, 373 [2009], quoting Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014, 1016 [1983]; see Fauvell v *528 Miglino, 111 AD3d 596 [2d Dept 2013]; Duffy v Longo, 207 AD2d 860, 862 [2d Dept 1994]). Although the statute itself is written in the disjunctive, apparently permitting a suit to prevent either an illegal act or waste, the controlling cases interpreting the statute have required that both elements be present (see Murtha v Incorporated Vil. of Is. Park, 202 AD2d 650 [2d Dept 1994], citing Matter of Korn v Gulotta, 72 NY2d 363 [1988]; Kadish v Roosevelt Raceway Assoc., 183 AD2d 874 [2d Dept 1992]; Starburst Realty Corp. v City of New York, 125 AD2d 148 [1st Dept 1987], lv denied 70 NY2d 605 [1987]). A taxpayer’s suit is not available merely to review a discretionary determination made in violation of supposedly unlawful procedures (see Starburst Realty Corp. v City of New York, 125 AD2d 148 [1987]). In addition, “waste” is not interpreted in a strict sense and can be any illegal act which imperils the public interest, is calculated to work a public injury, or will produce a public mischief (see Murtha v Incorporated Vil. of Is. Park, 202 AD2d 650 [1994]; Korn v Gulotta, 72 NY2d 363). “[A] municipal official. . . may only be held personally liable for a debt if there is fraud, collusion, bad faith amounting to fraud, or acts motivated by personal gain” (Murtha v Incorporated Vil. of Is. Park, 202 AD2d 650, 651 [1994]).
Town Law § 64 (1), which specifically refers to the Trustees, dispels any notions of the financial independence of the Trustees from the Town and Town Board. It expressly indicates that the monies coming into the Trustees’ hands constitute Town finances, meaning that said funds are to be credited to the Town, over which the Town Board has general management and control. By expressly listing the Trustees in Town Law § 64 (1) and omitting the Trustees from the definition of local government in General Municipal Law § 10 (1) (a), the state legislature relegated the Trustees to the financial position of an office or administrative unit of the Town. Moreover, based on the foregoing analysis, and in view of the fact that the Trustees receive tax revenue appropriations to conduct their activities and have been found by the Court of Appeals to be accountable for their actions (see Knapp v Fasbender, 1 NY2d 212, 230 [1956]), a taxpayer action may be maintained against the Trustees as officers or other persons acting on behalf of the Town (see General Municipal Law § 51). Furthermore, the Trustees come within the definition of “local officer” under Public Officers Law § 2 which includes “every officer of a political subdivision or municipal corporation of the state.”
*529 Having been listed as one of the entities to use Town-designated depository accounts under Town Law § 64 (1), the Trustees are to manage their finances in a manner similar to the other entities who also use such accounts, that is, the supervisor, town clerk, tax collector and tax receiver. The Trustees, who are most akin to a town supervisor in their functions, may, like a town supervisor (see Town Law § 29 [2], [4]), deposit and secure in their name monies coming into their hands but the depository accounts must be Town accounts.[4] Moreover, inasmuch as Town Law § 64 (1) is entitled “Control of town finances,” the Trustees are subject to article 8 of the Town Law entitled “Finances.” Pursuant to said article 8, the Trustees are an “[ajdministrative unit” which is defined as an office, department, division, bureau, board, commission, district, or other agency or town government, excluding a fire district (see Town Law § 103 [1]).
The aforementioned reading of the Town Law does not eradicate the independent existence of the Trustees and Town Board nor impinge on the Trustees’ ability to contract without prior authorization from the Town Board or Town voters. The Trustees are trustees of an express trust with a fiduciary duty to the residents and taxpayers of the Town. It is inconceivable that the state legislature would require that the Town control where the Trustees deposited the funds they officially received but would leave the guidelines as to the manner of accounting or the monitoring of the use of said funds to be agreed to by the parties to be accounted, that is the Trustees themselves and the Town, and/or for the court’s determination. To find that Town Law § 64 (1) does not incorporate by reference the applicability of article 8 of the Town Law renders Town Law § 64 (1) as it applies to the Trustees essentially meaningless. In doing so, the Town’s sole involvement with the Trustees would be the designation of bank depositories.
According to Ms. Kranz’s affidavits, revenues raised by the Trustees as a result of their activities are currently deposited in eight bank accounts, in depository banks approved for the deposit of Town funds by various resolutions of the Town Board, *530 in the Trustees’ name. She explains that expenditures from said accounts are made only after a voucher on a Town-approved form has been executed and submitted, reviewed and approved by the Trustees’ President and Secretary-Treasurer and then approved by resolution of the Trustees at a public meeting. Ms. Kranz adds that two signatures are required on checks.
With respect to the eight bank accounts, Ms. Kranz explains that the Chase Bank account is the Trustees’ general checking account in which are deposited “4x4” permit fees, boat ramp sticker fees, fishing and water fowl hunting guide license fees, mooring permit fees, dock and bulkhead construction fees, dredging fees, fees for the installation of pilings, and miscellaneous revenues such as copies. She states that expenditures from this account are for the Trustees’ general expenses. There are four Bridgehampton National Bank accounts and Ms. Kranz avers that one is the Lake Agawam Parking account in which parking lot access fees are deposited and from which expenditures are made for parking lot and bulkhead repairs, and another is the legal account in which are deposited donations for Trustee legal representation from individuals and organizations such as the Southampton Association for Beach Access, an organization of four-wheel drive fishermen, that contributed the sum of $20,000 as well as a portion of the settlement funds from the settlement of the action entitled Town of Southampton v AGIP, Inc. (referred to as the MTBE litigation). According to Ms. Kranz, the remaining two Bridgehampton National Bank accounts are a contingency or reserve account that has rarely been used for expenditures and a “Trustees’ Basin Special Dock Account” for the deposit of fees for docking at the boat basin maintained by the Trustees at Hampton Bays and from which expenditures are made for dock and bulkhead repairs at said location. The remaining three accounts are a Bank of America “Dock Lottery” account for seasonal docking permit fees at four locations which funds are used to maintain and repair said docks, a Capital One commercial shellfish account for deposits of fees for commercial and nonresident shellfish licenses and from which funds are used to purchase seed clams and baby scallops to seed the waters for the following year’s shellfishing activities, and a Suffolk County National Bank sand account into which sand sales proceeds are deposited and which funds are used to pay the salaries of several part-time Trustee employees including the plover monitors, and to pay a contractor to open Sagg and Mecox Bays several times a year to the ocean.
*531 The Trustees also provide a letter dated May 17, 2013 from the Office of the State Comptroller following its audit of the Trustees to discern whether the Trustees were effectively monitoring cash management to adequately safeguard their assets. The State Comptroller indicated that
“[t]he Board of Trustees is currently accounted for as a blended component unit of the Town and reported as a special revenue fund in the Town’s financial statements. The Town approves the hiring of certain employees and records the compensation of most employees, as well as all of the Trustees’ capital projects, on the Town books. However, the Trustees are responsible for the overall financial management of their own operations.
“The Trustees’ operating expenditures for 2012 totaled $384,930. These expenditures were funded primarily through various permit fees, including building permits, mooring permits, shellfish licenses, beach parking and boat ramp fees, and permits for vehicles to access the beach.
“We examined the Trustees’ cash management procedures for the period January 1, 2012 to January 9, 2013.”
Among the State Comptroller’s findings were the following:
“The Trustees need to improve their monitoring of cash management. The Trustees have not adopted an investment policy. For 2012, the Trustees had eight bank accounts, seven of which were interest-bearing accounts, at five separate banking institutions. The Treasurer for the Trustees told us that the Trustees spread their deposits among various banks because they have historically expressed a desire to keep bank balances under the FDIC insurance limit, which insures balances of up to $250,000. However, as of December 31, 2012, all funds were not fully covered by FDIC insurance. The Trustees held cash balances totaling $38,097 in excess of the FDIC coverage.
“Maintaining an unnecessary number of bank accounts can result in added costs and can be time consuming to control. Also, it can result in lost interest and/or reduced interest due to smaller amounts being invested separately. Multiple accounts can also make it more difficult to forecast *532 and manage cash flow. By consolidating bank accounts to the extent possible, the Trustees would be able to better determine the moneys available for investment and increase the likelihood that interest earnings on moneys remaining on deposit can be maximized by facilitating the pooling of cash. . . .
“The Trustees also did not establish internal controls to ensure that the amounts collected are deposited in a timely manner and intact. . . . Although we found all deposits to be intact, the failure to deposit Trustee receipts within the prescribed time limit increases the risk that moneys received will not be properly accounted for, that moneys could be lost or stolen, or that the Trustees will lose interest that could have been earned if moneys had been deposited timely.”
The following were the recommendations of the State Comptroller:
“1. The Trustees should adopt an investment policy setting forth the parameters under which money can be invested, and requiring FDIC coverage or other security for bank accounts.
“2. The Trustees should ensure that the number of official bank accounts is consolidated to an acceptable and practicable minimum.
“3. The Trustees should develop procedures to address the timeliness of depositing cash receipts.”
In response to the State Comptroller’s audit, the Board of Trustees passed a resolution on March 18, 2013 resolving to open a fiduciary account, described as an interest-bearing collateralized account, in Chase Bank, and then passed a resolution on April 1, 2013 resolving to close all the other Trustee accounts and transfer them all to one Chase fiduciary account. An open letter dated May 2, 2013 from the President of the Board of Trustees, Eric Shultz, indicated that the Board of Trustees anticipated that a collateralized account would be established within the next 30 to 60 days and that a new deposit policy was being established.
Plaintiffs allege in their complaint that unauthorized expenditures from the Trustee accounts include donations in lieu of flowers and for the purchase of funeral arrangements on not less than 11 occasions during the period of January 1, 2005 through July 7, 2010 which exceeded the sum of $10,875, and donations of public funds to various not-for-profit organiza *533 tions, all of which constituted gifts of public funds to private entities in violation of article VIII, § 1 of the State Constitution and a waste of public funds. Jon Semiear indicated in his affidavit dated January 26, 2011, as the then-President of the Board of Trustees, that of the claimed unlawful gifts of public funds totaling $16,567, nine items totaling $14,475 were payments for the provision of services to assist the Trustees in performing their mission of environmental conservation, most of which was disbursed to not-for-profit organizations, and that the sum of $1,887.50 was paid for funeral arrangements or, in one instance, for a donation in lieu of flowers, as gestures of appreciation and recognition with no private benefit to any Trustee. He stated that the Trustees would gladly reimburse the fund for $1,887.50 if the court found the expenditures to be inappropriate. Mr. Semiear noted that the Trustees’ municipal bidding procedures were consistent with those of the Town and state laws which only require competitive bidding for service contracts over $20,000, and asserted that with respect to other alleged expenses made contrary to municipal purchasing procedures, plaintiffs failed to specify those procedures. “Public funds are trust funds and as such are sacred and are to be used only for the operation of government” (Stern v Kramarsky, 84 Misc 2d 447, 452 [Sup Ct, NY County 1975]; see NY Const, art VII, § 8; art VIII, § 1). “[A]ny attempt to completely excuse the obligation of a trustee to account is void as against public policy” (Matter of Malasky, 290 AD2d 631, 632 [3d Dept 2002]; see Matter of Kassover, 124 Misc 2d 630, 631 [Sur Ct, Nassau County 1984]; Matter of Central Hanover Bank & Trust Co. [Momand], 176 Misc 183, 185-186 [Sup Ct, NY County 1941], affd 263 App Div 801 [1st Dept 1941], affd 288 NY 608 [1942]). The court finds that to the extent that the funds in said Trustee account(s) are not being credited to the Town and the Trustees are not complying with article 8 of the Town Law in their abidance of the so-ordered stipulation in Warner v Thiele, the actions of the Trustees are contrary to state law and must be corrected (see Korn v Gulotta, 72 NY2d 363).
On a motion to dismiss, the complaint is to be afforded a liberal construction, the facts alleged are presumed to be true, the plaintiff is afforded the benefit of every favorable inference, and the court is to determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Thomas v LaSalle Bank N.A., 79 AD3d 1015, 1017 [2d Dept 2010]; Scoyni v Chabowski, 72 AD3d 792, *534 793 [2d Dept 2010]; Lucia v Goldman, 68 AD3d 1064, 1066 [2d Dept 2009]). A motion to dismiss a complaint based on documentary evidence pursuant to CPLR 3211 (a) (1) may be granted only where the documentary evidence that forms the basis of the defense is such that it resolves all of the factual allegations as a matter of law, and conclusively disposes of the plaintiffs claims (see Turkat v Lalezarian Devs., Inc., 52 AD3d 595, 596 [2d Dept 2008]). On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court may consider affidavits submitted by the plaintiff to remedy any defects in the complaint (see Leon v Martinez, 84 NY2d at 88; Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]; DaCosta v Trade-Winds Envtl. Restoration, Inc., 61 AD3d 627, 628 [2d Dept 2009]). When evidentiary material is adduced in support of the motion, the court must determine whether the proponent of the pleading has a cause of action, not whether the proponent has stated one (see Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; Thomas v LaSalle Bank N.A., 79 AD3d at 1017; Scoyni v Chabowski, 72 AD3d at 793; Peter F. Gaito Architecture, LLC v Simone Dev. Corp., 46 AD3d 530 [2d Dept 2007]).
Based on the foregoing, the court finds the first cause of action pursuant to General Municipal Law § 51 alleging unlawful expenditures and requesting an accounting to be legally sufficient (see Di Paola v City of Glen Cove, 21 AD2d 678 [2d Dept 1964], lv dismissed 14 NY2d 488 [1964]). The second cause of action for a declaratory judgment declaring the legal status of the Trustee accounts, the alleged gifts of public funds, the Trustee initiated litigation and the current manner of municipal purchasing and bidding by the Trustees also states a cause of action (see Downey v Merchants Mut. Ins. Co., 30 AD2d 171 [4th Dept 1968], affd 23 NY2d 989 [1969]). Thus, plaintiffs have made a sufficient showing to withstand defendants’ motions to dismiss the complaint (see CPLR 3211 [a] [7]; Sysco Corp. v Town of Hempstead, 133 AD2d 751 [2d Dept 1987]). Therefore, the motions to dismiss are denied.
Plaintiffs now move (001) for an injunctive order prohibiting, pendente lite, defendant Trustees from disbursing funds from said Trustee accounts without first obtaining the Town Board’s consent and an audit and approval of the Town Comptroller; to compel defendants to produce resolutions or other documents establishing said accounts; for the issuance of a court-ordered subpoena duces tecum to each depository institution holding accounts of public funds for the Trustees; and requiring the *535 furnishing of a security bond as required by General Municipal Law § 51 in the amount of $250 in favor of the defendants.
With respect to plaintiffs’ requested injunctive order, they seek an order directing that all sums now held by the Trustees in any and all Trustee accounts and any public funds that are received by the Town trustees in the future be turned over to the Town Comptroller for safekeeping with a direction that no such public funds be expended therefrom absent formal approval by the Town Board or pursuant to such lawful rules, regulations, ordinances or local laws of the Town of Southampton as currently exist or such as the Town Board shall establish in the future. Plaintiffs explain that they are requesting the imposition of fiscal and procedural oversight over the Trustees’ actions of contracting liabilities and expending public funds through the reestablishment of the audit function of the Comptroller over the expenditures of the Trustees pursuant to Town Law § 100. They assert that defendants will not be harmed or prevented from continuing payments on lawful contracts or lawfully engaging vendors to purchase goods or services; that they have established their likelihood of success on the merits with allegations and evidence of the Trustees’ past violations of the “anti-gift” provisions of the State Constitution, article VIII, § 1, of the Trustees’ failure to follow competitive bidding law requirements under General Municipal Law § 103 and Town Law § 122, of the Trustees’ knowing unauthorized retention of counsel, and that the Trustees are operating under a system that violates Town Law § 64 (1) and article 8 of the Town Law with the consent of the Town Board ostensibly under the authority of a stipulation between themselves that is contrary to public policy and to which the parties have failed to adhere; and that the waste of public funds through the discern-able desire of the Trustees to continue their unfettered expenditure, in their sole discretion, of public funds from the Trustee accounts and the enormity of the past expenditures is immediate, likely to recur and irreparable.
“A party seeking the drastic remedy of a preliminary injunction has the burden of demonstrating, by clear and convincing evidence, (1) a likelihood of ultimate success on the merits, (2) the prospect of irreparable injury if the provisional relief is withheld, and (3) a balancing of the equities in the movant’s favor” (Berkoski v Board of Trustees of Inc. Vil. of Southampton, 67 AD3d 840, 844 [2d Dept *536 2009]; see CPLR 6301; Shasho v Pruco Life Ins. Co. of N.J., 67 AD3d 663, 665 [2d Dept 2009]; Ying Fung Moy v Hohi Umeki, 10 AD3d 604 [2d Dept 2004]).
“The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual” (Ruiz v Meloney, 26 AD3d 485, 486 [2d Dept 2006]). “The decision to grant or deny a preliminary injunction lies within the sound discretion of the Supreme Court” (Arcamone-Makinano v Britton Prop., Inc., 83 AD3d 623, 625 [2d Dept 2011]).
Here, plaintiffs have established their entitlement to the requested preliminary injunction relief (see CPLR 6301; Winchester Global Trust Co. Ltd. v Donovan, 58 AD3d 833 [2d Dept 2009]; Glorious Temple Church of God in Christ v Dean Holding Corp., 35 AD3d 806 [2d Dept 2006]; Friedman v Ragin, 228 AD2d 642 [2d Dept 1996]). The court notes that plaintiffs’ motion papers fail to discuss the subject of an undertaking, which is a mandatory prerequisite to an injunction (see CPLR 6312 [b]). The sum fixed by the court for the undertaking must be sufficient to compensate the party being enjoined for the damages and costs sustained by that party as a result of the issuance of the preliminary injunction in the event that it is later determined that the requester was not entitled to the injunctive relief (CPLR 6312 [b]; Carter v Konstantatos, 156 AD2d 632 [2d Dept 1989]). The absence of an undertaking renders the preliminary injunction voidable (Olechna v Town of Smithtown, 51 AD2d 1036 [2d Dept 1976]). A review of the papers reveals the total sum available in the Trustee account(s), at the time of submission, over which the Trustees will not have control upon the granting of a preliminary injunction. Predicated on this, the court sets the undertaking of the plaintiffs as a prerequisite of the injunction at the sum of $140,000.
To the extent that they have failed to do so, defendants are directed to produce resolutions or other documents establishing said Trustee account(s). Inasmuch as it is unclear at this juncture how many Trustee accounts are currently open and in which depository institution, the court denies plaintiffs’ request for the issuance of a court-ordered subpoena duces tecum to each depository institution holding accounts of public funds for the Trustees with leave to renew upon discovery of said information. Finally, plaintiffs are directed to furnish a security bond as required by General Municipal Law § 51 in the amount of $250 in favor of the defendants.

. The Trustees admit this allegation in their amended answer dated January 14, 2013.

. Plaintiffs oppose the conversion of the dismissal motion to summary judgment as outside the stipulation of the parties and resulting order of this court granted December 3, 2012, which vacated the prior order dated January 12, 2012 (see Gessin v Throne-Holst, 2012 NY Slip Op 30235[U] [Sup Ct, Suffolk County 2012]) and marked the original motions as pending and allowed the submission of additional materials in support, and as premature at this juncture. The court notes that there is no indication in the notice of motion that the requested relief is other than dismissal and this matter does not *522 involve circumstances in which notice may be overlooked. Therefore, the court declines to convert the motion to summary judgment (see CPLR 3211 [c]; Sokol v Leader, 74 AD3d 1180 [2d Dept 2010]; see also Hendrickson v Philbor Motors, Inc., 102 AD3d 251 [2d Dept 2012]).

. Defendant Town submits a Town Board Resolution No. 2013-2 designating six banks as banks of deposit for all Town of Southampton funds for the year 2013.

. Town Law § 64 (1) limits its reference to General Municipal Law § 10 solely to the manner of designation of depositories (see General Municipal Law § 10 [2] [a]). Notably, neither the Town Law nor the General Municipal Law require the Town Board to indicate or limit the type or number of accounts that can be maintained in the depositories designated by the Town Board.